# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF ILLINOIS
### EASTERN DIVISION

| | |
|---|---|
| **MATTHEW SIPP**, | ) |
| Plaintiff, | ) ) ) |
| v. | ) Case No. 16 C 7261 |
| **NANCY A. BERRYHILL**, Acting Commissioner of Social Security, | ) ) ) ) |
| Defendant. | ) |

## **MEMORANDUM ORDER**

Matthew Sipp ("Sipp") has been acting pro se in this appeal from the adverse decision by the Commissioner of Social Security ("Commissioner") (originally Carolyn Colvin and now Acting Commissioner Nancy Berryhill[1]) that denied Sipp's January 13, 2014 application for Social Security Income ("SSI") payments -- payments of a type that Sipp had received many years before but that had been discontinued back in 2005. On December 23, 2016 Sipp filed a self-prepared Motion for Judgment on the Pleadings, after which Commissioner's counsel filed a cross-motion for summary judgment. Finally, rather than tendering the originally scheduled reply to that cross-motion by the previously-set April 2, 2017 submission date, on March 22 Sipp filed a pro se motion to dismiss Commissioner's cross-motion because of its noncompliance with this District Court's LR 56.2 (that LR requires any party moving for summary judgment against a pro se litigant to "serve and file as a separate document, together with the papers in support of

---

[1] In accordance with Fed. R. Civ. P. ("Rule") 25(d), that change has triggered a substitution of the named defendant in the case, and the caption of this memorandum order reflects that substitution.

the motion, a 'Notice to Pro Se Litigant Opposing Motion for Summary Judgment'" in the detailed explanatory form prescribed in the LR.

Sipp is dead right in that respect. But all that his contention has done on that score is to put some figurative egg on the face of the equally figurative Uncle Sam -- that is, he has no doubt embarrassed government counsel by pointing out the breach of LR 56.2. Even so, in terms of the real world of litigation that error clearly falls into the "no harm, no foul" category.

After all, this District Court included that informational requirement in an effort to educate the typical pro se litigant, who has no familiarity at all with litigation generally or with summary judgment practice in particular, as to how that litigant should cope with such a motion that seeks to dispatch the pro se party's lawsuit as a matter of law. Here Sipp has plainly demonstrated, through his original Complaint followed by his Motion for Judgment on the Pleadings, that he does not need a primer explaining his responsibilities in coping with Commissioner's motion in opposition. Moreover, it should be recognized that Social Security appeals differ from the ordinary federal lawsuit in that the record has been made at the Social Security Administration level -- that the task of the litigants on both sides of the "v." sign is to demonstrate why Commissioner's final decision on that record is or is not sustainable, <u>not</u> to marshal other facts not in the record that would support or undermine the administrative decision.

Accordingly Sipp's motion to dismiss Commissioner's cross-motion is denied. More importantly from a substantive prospective, the rest of his "motion to dismiss summary judgment" sets out Sipp's responses to the arguments presented in Commissioner's cross-motion

for summary judgment, so that it effectively acts as the reply called for by the parties' agreed-upon (and this Court's approved) scheduling order.

This Court will therefore proceed to rule on the cross-motions for summary judgment in light of all the necessary paperwork submitted by both sides. As stated earlier, Sipp has filed a motion for judgment "on the pleadings," and Commissioner's response has taken the form of a motion for summary judgment under Rule 56.[2] For the reasons stated hereafter, Commissioner's motion must be granted while Sipp's is denied, so that Commissioner's decision is upheld and this action is dismissed.

**Factual Background**[3]

Administrative Judge Russell S. Barone ("ALJ Barone") approved Sipp for SSI payments in 1996, largely on the basis of his blindness (R. 135-37). On that score ALJ Barone found that Sipp had been unable to work and had not engaged in substantial employment between December 1, 1990 and December 3, 1992 (id.).

---

[2] Rule 56 imposes on the summary judgment movant the burden of establishing the absence of a genuine issue of material fact (Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986)). For that purpose this Court is "not required to draw every conceivable inference from the record -- only those inferences that are reasonable" -- in the light most favorable to the nonmovant, in this case Sipp (Bank Leumi Le-Israel, B.M. v. Lee, 928 F.2d 232, 236 (7th Cir. 1991) and cases cited there). Sipp has labeled his motion as one seeking judgment "on the pleadings" (see Rule 12(c)), although the typical plaintiff in these cases files a motion for summary judgment. In any event the facts are not in dispute in this case because both sides must perforce limit themselves to the administrative record, so that only issues of law are left for decision. This case is therefore ripe for decision, even though Sipp has filed a Rule 12(c) motion rather than the usual cross-motion for summary judgment and even though the decision reached in this opinion is adverse to Sipp.

[3] All further statutory references will take the form "Section --," using the Title 42 numbering rather than the statute's internal numbering. All portions of 20 C.F.R. will be cited "Reg. § --." Finally, citations to the administrative record will take the form "R. --").

Although Sipp claims to have received no written notice of the termination of his payments when they stopped in 2005, Commissioner highlights the facts that Sipp filed a new application for benefits on December 28, 2005 after his benefits had been terminated (that application was then denied on March 10, 2006, and Sipp did not seek further administrative review) (R. 30). It is relevant to note that during that time Sipp's eyesight had improved significantly (likely due to his wearing eyepatches).

On February 5, 2014 Sipp filed an appeal to reinstate the benefits that had been cut off in 2005, arguing that he was not informed of his right to appeal as he should have been when his benefits were cut off, and asking that his benefits be renewed (R. 74-76). That appeal was denied on April 18, 2014 and again on reconsideration on October 1, 2014 (R. 52-58). Sipp then requested a hearing on October 26, and his request was granted (R. 60-62).

Administrative Judge Carla Suffi ("ALJ Suffi") did not treat Sipp's filing as an appeal because it was submitted after the time for an appeal had expired. Instead she treated it as a new filing for disability benefits and found that Sipp was not eligible to receive them, denying benefits on January 29, 2015 at a hearing Sipp chose not to attend (see R. 14-28). She found that although there was evidence that Sipp had not engaged in substantial gainful activity since the 2014 application date and that he had amblyopia with vision impairment that poses more than minimal limitations on his ability to do work, there was insufficient evidence to show that Sipp had an impairment that equaled the severity of one of the listed impairments in Reg. §§ 416.920(d), 416.925 and 416.926 (R. 19-21).

AJ Suffi then went on to conclude that Sipp had the residual functional capacity to perform a full range of work at all exertional levels with a list of limitations, citing the fact that

Sipp had failed to seek independent medical treatment for his eyesight issue (R. 21-23). After citing many jobs in the national economy that Sipp can perform considering all relevant factors, the ALJ agreed with the conclusions of multiple examiners and found Sipp to be not disabled (R. 23-24).

On March 4, 2015 Sipp filed an appeal to the Office of Disability Adjudication and Review (R. 6-11). After that was denied, he filed this Complaint on July 15, 2016. In his argument as to why he should be given benefits, Sipp points to his continued disability (amblyopia with vision impairment) as well as to his continued lack of work since the application date.[4]

### **Standards of Review and Applicable Law**

This Court reviews ALJ Suffi's opinion as Commissioner's final decision, considering its legal conclusions de novo (Haynes v. Barnhart, 416 F.3d 621, 626 (7th Cir. 2005)). By contrast, factual determinations receive deferential review, so that courts may not "reweigh the evidence or substitute [their] own judgment for that of the ALJ" and will affirm Commissioner's decision "if it is supported by substantial evidence" (id.). Substantial evidence is "more than a mere scintilla" -- it is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion" (Richardson v. Perales, 402 U.S. 389, 401 (1971) (internal quotation marks omitted)).

Credibility determinations receive even more deferential review. Courts can reverse or vacate an ALJ's credibility findings only when the findings are "patently wrong and deserving of

---

[4] It may be noted that Sipp also cites mental issues as an asserted additional disability, but there has been no evidence of any mental health treatment or other evidence of mental disabilities beyond Sipp's subjective statements.

reversal" (Elder v. Astrue, 529 F.3d 408, 413-14 (7th Cir. 2008) (internal quotation marks and citation omitted)). Still, ALJs commit reversible error when they ground their credibility determinations upon "errors of fact or logic" (Allord v. Barnhart, 455 F.3d 818, 821 (7th Cir. 2006)).

As such cases as Haynes, 416 F.3d at 626 (internal quotation marks and citation omitted) teach:

> In rendering a decision, the ALJ must build a logical bridge from the evidence to his conclusion. The ALJ need not, however, provide a complete written evaluation of every piece of testimony and evidence.

Nonetheless an ALJ "cannot simply cherry-pick facts that support a finding of non-disability while ignoring evidence that points to a disability finding" (Denton v. Astrue, 596 F.3d 419, 425 (7th Cir. 2010) (per curiam)).

Hence "[i]f the Commissioner's decision lacks adequate discussion of the issues, it will be remanded" (Villano v. Astrue, 556 F.3d 558, 562 (7th Cir. 2009)). Rejection is also required if the ALJ has committed an error of law, regardless of how much evidence supports his or her factual findings (see Binion v. Chater, 108 F.3d 780, 782 (7th Cir. 1997)). And Larson v. Astrue, 615 F.3d 744, 749 (7th Cir. 2010) has reiterated the long-standing rule, going back to SEC v. Chenery Corp., 318 U.S. 80, 87-88 (1943), that only reasons that appear in an ALJ's opinion may be considered on review. But "we will nonetheless give the opinion a commonsensical reading rather than nitpicking at it" (Rice v. Barnhart, 384 F.3d 363, 369 (7th Cir. 2004) (internal quotation marks omitted)).

To qualify for benefits a claimant must be 'disabled' within the meaning of the Act (Liskowitz v. Astrue, 559 F.3d 736, 739 (7th Cir. 2009), citing Section 423(a)(1)(E)). Disability is defined in Section 423(d)(1)(A)

> as an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

To determine whether a claimant meets that definition, such cases as Liskowitz, 559 F.3d at 740 instruct the ALJ to conduct the sequential five-step inquiry set forth in Reg. § 404.1520(a)(4), in which the ALJ must determine (Dixon v. Massanari, 270 F.3d 1171, 1176 (7th Cir. 2001)):

> (1) whether the claimant is currently employed, (2) whether the claimant has a severe impairment, (3) whether the claimant's impairment is one that the Commissioner considers conclusively disabling, (4) if the claimant does not have a conclusively disabling impairment, whether she can perform her past relevant work, and (5) whether the claimant is capable of performing any work in the national economy.

For the purposes of Sipp's SSI application he must establish disability at some time between his application date of January 13, 2014 and the present (see Reg. §§ 416.200, 416.202(g)).

Once an applicant is aware that his benefits have been terminated under Section 405(g), the applicant must launch an appeal to review that termination within the next 60 days, although there can be equitable tolling if the applicant is unable to file a timely claim despite the exercise of "reasonable diligence" (see, e.g., Holland v. Florida, 560 U.S. 631, 658 (2010)). Apart from that possible tolling, ALJ decisions can no longer be reviewed once that 60 day limit has expired without the filing of an appeal.

**<u>Untimeliness of Sipp's Claim</u>**

Commissioner correctly argues that it is too late for Sipp to appeal the decision from 2005 to end his benefits. On that score Sipp contends that he never received the formal notice that his benefits were ending, but no reasonable view of the situation could allow the normal 60 day limit on filing an appeal to be extended for nearly a decade. Section 405(g) provides in relevant part:

> Any individual, after any final decision of the Commissioner of Social Security made after a hearing to which he was a party, irrespective of the amount in controversy, may obtain a review of such decision by a civil action commenced within sixty days after the mailing to him of notice of such decision or within such further time as the Commissioner of Social Security may allow.

Under Commissioner's regulations (1) "mailing" is the date on which the claimant receives the notice of the Appeals Council's decision and (2) such receipt is presumed to have occurred five days after the notice's date unless the claimant makes a reasonable showing to the contrary (Reg. § 422.210(c)).

Thus Sipp should have filed this action no later than May 14, 2006 (65 days after his 2005 application was denied). Even that calculation gives Sipp the maximum benefit of the doubt, for it assumes that he was unaware that his benefits were cut off until his 2005 application was denied. As Commissioner points out, Sipp must have been aware that he had been denied new benefits at least when he filed a new application for benefits and no longer received them. Sipp argues that the time period should be extended because he was never told <u>why</u> his benefits were terminated, but that is not the test for starting the ticking of the time-to-appeal clock.

Other than his blanket assertion that he never received notification of the termination of benefits, Sipp has offered nothing to show that he did not receive notice of the <u>decision</u>. That

being so, he should be subject to the normal deadline for submitting a complaint. There is no evidence that Sipp was unable to file the claim earlier despite reasonable diligence, and the fact that he argued for a reopening of the earlier decision in his 2014 application is insufficient to undermine the 60 day rule (see Califano v. Sanders, 430 U.S. 99, 108 (1977)). It is therefore too late to challenge the 2005 stoppage of benefits.

## Validity of ALJ Decision

While Sipp did not submit his complaint in time to challenge the 2005 decision to terminate benefits, he did submit his complaint about the more recent 2014 denial of benefits in a timely manner. But the Commissioner was still correct in denying benefits to Sipp in the face of uncontradicted confirmations from experts that Sipp was no longer disabled. Medical doctors reviewed all of Sipp's evidence of a disability, and Sipp offers on contention that ALJ Suffi failed to review any evidence. In fact, most of Sipp's arguments for why he should be granted relief fall back on the 1996 grant of benefits. In addition, ALJ Suffi went through the earlier-described five-step analysis in responsible detail to conclude that Sipp has no disability.

Medical consultants such as those who concluded that Sipp was not disabled are typically relied on in cases like this (see, e.g., Farrell v. Sullivan, 878 F.2d 985 (7th Cir. 1989)), and Sipp did not even attend the hearing (in person or via video, as he was able to do if he wished) in an effort to contradict the consultants. Other than his subjective written statements, Sipp gave no medical evidence of the severity of his conditions more recent than the evidence from the 1996 decision.

Additional arguments by Sipp, including his claims that he was not given a requested 2007 eye exam (in that respect 2007 is beyond the period that Commissioner was required to

review) and that the documents were not in an order that he considered logical, are irrelevant to this Court's review of the case. There is also no evidence that the failure to send information to the correct address in the CD hurt Sipp's ability to appeal, for his present complaint does not point to any additional information of which he was assertedly unaware. Since then he has had time to review the CD, and he proffers nothing other than an unsupported statement that he would have had more of a chance to succeed in filing his complaint -- he points to no actual information that he did not have at the time.

## **Conclusion**

After considering the merits of every aspect of Sipp's claims, this Court finds that there is much more than substantial evidence in the record to support Commissioner's decision to deny Sipp's application for benefits on January 29, 2015. Accordingly Commissioner's motion for summary judgment (Dkt. No. 18) is granted, Sipp's motion for judgment on the pleadings (Dkt. No. 17) is denied and this action is dismissed with prejudice.

_____
Milton I. Shadur
Senior United States District Judge

Date: March 30, 2017